UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| DEMARCO DODSON, Individually, and on behalf of His Minor Child "D.D.", AND ALL OTHERS ) SIMILARLY SITUATED<br>PLAINTIFF,<br><br>VERSUS<br><br><br>ABBOTT LABORATORIES<br>D/B/A ABBOTT NUTRITION,<br>DEFENDANT | NO.<br><br>CLASS ACTION COMPLAINT<br>JURY TRIAL DEMANDED |

**COMES NOW**, DEMARCO DODSON, Individually, and on behalf of his minor child D.D. ("Plaintiff"), and on behalf of the Classes, who states and alleges as follows:

### INTRODUCTION

1. Plaintiff brings this action on behalf of himself and his minor child D.D., and on behalf of a Class of similarly situated consumers against Defendant Abbott Laboratories d/b/a Abbott Nutrition ("Defendant" or "Abbott") who purchased certain powdered infant formulas manufactured and sold by Abbott.

2. Abbott manufactures and sells infant formula products. These products include the brands Similac, Alimentum, and EleCare which parents trust and use to feed and nourish their children.

3. On February 17, 2022, the U.S. Food and Drug Administration ("FDA") in conjunction with the U.S. Centers for Disease Control and Prevention ("CDC") alerted consumers to avoid purchasing or using certain powdered infant formula products produced at Abbott's Sturgis, Michigan facility.

1

4. Specifically, the FDA announced that it is investigating consumer complaints of Cronobacter sakazakii and Salmonella Newport infections connected to powdered infant formula products produced by Abbott.

5. On February 18, 2020, Abbott announced a recall of its powdered infant formula products, including the brands Similac, Alimentum, and EleCare because they suffer from a defect which could result in serious injury, permanent impairment, and even be life-threatening.

6. These products may contain Cronobacter sakazakii and Salmonella Newport bacteria, which when consumed, can result in serious adverse health effects, including sepsis, meningitis, poor feeding, irritability, fever, jaundice, grunting breaths, abnormal movements, and bowel damage.

7. Similac, Alimentum, and EleCare products where the first two digits of the product are 22 through 37 and the code on the container contains "K8," "SH," or "Z2," and the use-by date is April 1, 2022 or later are all part of the recall ("Recalled Products").

8. Despite the recall, Abbott is not crediting or replacing affected Recalled Products, which many parents and caretakers rely on daily to feed and care for their children. Since Abbott is now telling consumers it is not safe for their infants to consume these products, but many consumers rely on them to feed their children, Abbott leaves many consumers with no safe option but to pay full price for a newer version.

9. Plaintiff purchased Abbott's powdered infant formula included in the recall. Plaintiff would not have purchased the product or would have paid less for it had they known about the contamination and potential health hazards.

10. As a result of Abbott's unfair, deceptive, and/or fraudulent business practices, consumers of these products, including Plaintiff, have suffered an ascertainable loss, injury-in-fact, and otherwise have been harmed by Abbott's conduct.

## PARTIES

11. Plaintiff is a resident of the City of Miami, County of Dade, Florida.

12. Defendant ABBOTT LABORATORIES, INC. D/B/A ABBOTT NUTRITION, is a Delaware Corporation with its principal place of business in 100 Abbott Park Road, Abbott Park, Illinois. Defendant manufactures, markets, advertises, labels, distributes and sells the Recalled Product at issue in this litigation.

13. Defendant is engaged in the business of manufacturing and selling medical devices and products, including powdered infant formulas through its Abbott Nutrition division.

## JURISDICTION AND VENUE

14. This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d), this Court has original jurisdiction because the aggregate claims of the members of the putative class exceeds $5 million, exclusive of costs, and at least one of the Class members is a citizen of a different state than Abbott.

15. This Court has specific personal jurisdiction over Defendant because Defendant has purposefully availed itself of the privileges and benefits of doing business in Florida. Abbott regularly and systematically conducts business and sells its products in this District to customers in this District, including to Plaintiff and the Class. As such, Abbott is subject to the jurisdiction of this Court.

16. Defendant subjected itself to jurisdiction in Florida by doing business in Florida and by contracting with Florida businesses and by performing such contracts in part in Florida and by committing torts where one or more elements of the tort or one or more of the tortious acts occurred in Florida.

17. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Abbott is subject to personal jurisdiction in this District and regularly conducts business in this District.

**FACTUAL BACKGROUND AND GENERAL ALLEGATIONS**

**I.    ABBOTT'S INFANT FORMULA.**

18. Similac is a brand of powdered infant formula produced by Abbott which Abbott promises will "give babies a strong start by helping to keep them fed, happy, and healthy." *See:* Why Similac, https://www.similac.com/why-similac.html (last visited February 18, 2022). According to Abbott, Similac "is the #1 Pediatrician Recommended Brand for Immune Support." *Id.*

19. Alimentum is a brand of powdered infant formula produced by Abbott for infants with lactose sensitivity which Abbott claims is "the #1 infant formula brand fed for cow's milk protein allergy in the US." See Alimentum Product Description, https://www.similac.com/products/baby-formula/alimentum-powder/19-8oz-can-4pack.html (last visited February 18, 2022).

20. EleCare is a brand of powdered infant formula produced by Abbott for infants who cannot tolerate intact or hydrolyzed protein due to conditions such as severe food allergies

or short bowel syndrome. See EleCare Product Information, https://elecare.com/ (last visited February 18, 2022).

21.     The worldwide market for powdered infant formula was valued at $27.7 billion in 2019.[1]

22.     The powdered infant formula market in the United States was valued at $3.65 billion in 2019.[2]

23.     In 2016, Abbott's Similac Advance product accounted for 21.2% of the powdered infant formula market share, with two other Similac products in the top 10.[3]

24.     Abbott distributes its powdered infant formula products nationwide and internationally.

25.     According to Abbott, Recalled Products were distributed to the following countries: Australia, Bahrain, Barbados, Bermuda, Canada, Chile, China, Colombia, Costa Rica, Dominican Republic, Ecuador, Egypt, Guam, Guatemala, Hong Kong, India, Indonesia, Israel, Jordan, Kuwait, Lebanon, Malaysia, Mexico, New Zealand, Oman, Peru, Puerto Rico, Qatar, Saudi Arabia, Singapore, South Africa, Sudan, Taiwan, Thailand, United Arab Emirates, United Kingdom, United States, and Vietnam ANI South.

---

[1] See Infant Formula Milk Powder Market Size 2021, https://www.marketwatch.com/press-release/infant-formula-milk-powder-market-size-2021-global-industry-trends-future-growth-regional-overview-market-share-by-prominent-players-developing-technologies-tendencies-revenue-cagr-of-42-and-forecast-outlook-till-2024-2021-12-09 (last visited February 18, 2022).

[2] See U.S. Baby Infant Formula Market to Reach $5.81 Bn, Globally, by 2027 at 5.8% CAGR: Allied Market Research, https://www.prnewswire.com/news-releases/us-baby-infant-formula-market-to-reach-5-81-bn-globally-by-2027-at-5-8-cagr-allied-market-research-301273688.html (last visited February 18, 2022).

[3] See Market share of the leading baby formula (powder) brands of the United States in 2016, based on dollar sales, https://www.statista.com/statistics/443950/market-share-of-the-leading-us-baby-formula-powder-brands/ (last visited February 18, 2022).

**II. CURRENT CASES LINKED TO ABBOTT'S INFANT FORMULA**

26. The first known hospitalization occurred in and around September 6, 2021.

27. While initially the FDA reported that two children had died and two others were sickened after consuming formula from the Sturgis plant that contained Cronobacter sakazakii, Agency documents received via public records requests indicate the Agency had investigated seven additional deaths of children following their ingestion of Abbott formula produced at the Sturgis plant since 2021.[4]

28. The FDA investigated 128 consumer complaints collected by the FDA between December 2021 and March 2022, including 25 described as "life-threatening illness/injury."[5]

29. These additional complaints include reports of multiple forms of infection, inclusive of Cronobacter sakazakii, Proteus mirabilis, COVID-19, Salmonella, CDIFF (Clostridioides difficile), Shigella, astrovirus, and "shigelloides." Two of the deaths reported mentioned Salmonella.

30. Cronobacter sakazakii, formerly known as Enterobacter sakazakii, is a germ that can live in dry foods, such as powdered infant formula, powdered milk, herbal teas, and starches.

31. Cronobacter can cause diarrhea and urinary tract infections in people of all ages, but infection can be very serious in infants. Cronobacter germs can cause a dangerous blood infection (sepsis) or make the linings surrounding the brain and spinal cord swell (meningitis). Infants two months of age and younger are most likely to develop meningitis if they get sick from Cronobacter.

---

[4] Phyllis Entis, "Nine baby deaths reported to FDA during Abbott Nutrition investigation," efoodalert.com (June 8, 2022), https://efoodalert.com/2022/06/08/nine-baby-deaths-reported-to fda-during-abbott-nutrition-investigation. See also the FDA spreadsheet of Abbott Complaints received by the article's author pursuant to a Freedom of Information Act Request. Id. (available at https://efoodalert.files.wordpress.com/2022/06/abbott-complaints-spreadsheet redacted.pdf)(last accessed on June 21, 2022).
[5] Id.

32. Salmonella Newport is one of many Salmonella serotypes, a type of bacteria known to cause more than one million foodborne illnesses in the United States every year.

33. Salmonella Newport is known to be antimicrobial resistant meaning it is resistant to antibiotics like ampicillin, chloramphenicol, streptomycin, sulphonamides, and tetracycline.

34. Salmonella illness can be serious, and children under the age of five are more likely to get a serious Salmonella infection.

35. Symptoms for salmonellosis, the name for an infection caused by Salmonella bacteria, include fever, stomach cramps, diarrhea, bloody stools, prolonged vomiting, and dehydration. Severe cases of salmonellosis require hospitalization and may result in death.

### III. THE FDA'S INSPECTION OF ABBOTT'S FACILITY.

36. The FDA conducted an onsite inspection of Abbott's Sturgis, Michigan facility.

37. The FDA tested Abbott's Sturgis, Michigan facility and received several positive Cronobacter results from environmental samples.

38. The onsite inspection also included adverse inspectional observations by FDA investigators.

39. The FDA reviewed Abbott's internal records which evidenced environmental contamination with Cronobacter sakazakii bacteria.

40. Abbott's internal records also evidenced the destruction of product at the Sturgis, Michigan facility due to the presence of Cronobacter.

41. On February 17, 2022, the FDA, in conjunction with the CDC, announced a warning to consumers to not purchase or use Recalled Products.

42. FDA Deputy Commissioner for Food Policy and Response stated as part of the FDA warning, "As this is a product used as the sole source of nutrition for many of our nation's

newborns and infants, the FDA is deeply concerned about these reports of bacterial infections. We want to reassure the public that we're working diligently with our partners to investigate complaints related to these products, which we recognize include infant formula produced at this facility, while we work to resolve this safety concern as quickly as possible."

43. On February 18, 2022, Abbott announced a recall of its powdered infant formulas. The recall does not include a refund, reimbursement, or replacement for consumers who purchased or used Recalled Products.[6]

### IV. PLAINTIFF'S USE OF ABBOTT'S RECALLED PRODUCT.

44. Plaintiff has purchased Abbott's powdered infant formulas that are subject to the recall.

45. Plaintiff has regularly fed their infant with Abbott's powdered infant formulas.

46. Plaintiff is now afraid to use Abbott's Recalled Product because of the health dangers described in Abbott's recall.

47. Plaintiff will now have to purchase new powdered infant formula at full price.

48. Plaintiff would not have purchased Abbott's Recalled Product if they had known it was defective and contaminated.

49. Plaintiff seeks a refund, reimbursement, or replacement of the Recalled Product, including any and all other damages for the injuries they have sustained as a result of Abbott's defective and contaminated Recalled Products.

---

[6] Recall Notice, https://www.similacrecall.com/us/en/home.html (last visited February 20, 2022).

## V. CLASS ACTION ALLEGATIONS

50. Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class of individuals defined as:

> Nationwide Class:
>
> All persons who, within the applicable statute of limitations period, purchased a Recalled Product manufactured by Abbott Laboratories.
>
> Florida Class:
>
> All persons who, within the applicable statute of limitations period, purchased a Recalled Product manufactured by Abbott Laboratories.

51. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add subclasses, if necessary, before this Court determines whether class certification is appropriate.

52. Excluded from the Class are: (1) any entity in which Defendant has a controlling interest; (2) officers or directors of Defendant; (3) this Court and any of its employees assigned to work on the case; and (4) all employees of the law firms representing Plaintiff and the Class.

53. This action is brought and may be properly maintained on behalf of each Class member.

54. Numerosity of the Class: The members of the Class are so numerous that a joinder of all members would be impracticable. While the exact number of Class members is presently unknown to Plaintiff, and can only be determined through appropriate discovery, Plaintiff believes the Class is likely to include thousands of members based on the fact Abbott distributes its Recalled Products nationwide.

55. The Class definition identifies unnamed Plaintiffs by describing a set of common characteristics sufficient to allow a member of that group to identify themselves as having a right to recover damages from Defendant. Other than by direct notice by mail or email, alternatively

proper and sufficient notice of this action may be provided to the Class through notice published in newspapers or other publications.

56.     Commonality: This action involves common questions of law and fact. The questions of law and fact common to both Plaintiff and the Class include, but are not limited to, the following:

    a.   Whether the Recalled Products fail under the implied warranty of usability;

    b.   Whether Abbott was negligent in selling the Recalled Products;

    c.   Whether Abbott failed to warn consumers regarding the risks of the Recalled Products;

    d.   Whether Abbott's conduct constitutes unfair or deceptive acts or practices under the The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA");

    e.   Whether Abbott was unjustly enriched by the sale of Recalled Products;

    f.   The appropriate nature of class-wide equitable relief; and

    g.   The proper method or methods to determine and measure Plaintiff's and the Class' damages.

57.     Typicality: Plaintiff's claims are typical of all members of the Class. The evidence and the legal theories regarding Abbott's alleged wrongful conduct committed against Plaintiff and the Class are substantially the same because all putative Class members purchased Abbott's Recalled Product for personal use and can no longer use the Recalled Products for their intended use. Accordingly, in pursuing their own self-interest in litigating their claims, Plaintiff will also serve the interests of the Class.

58.     Adequacy: Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff retained competent counsel experienced in class action litigation to ensure such protection. There are no material conflicts between the claims of the representative Plaintiff and

the Class that would make class certification inappropriate. Additionally, Plaintiff's Counsel are competent to advance the interests of the Class having been designated as Lead Counsel in dozens, if not hundreds, of Class cases. Plaintiff and their Counsel intend to prosecute this action vigorously.

59.     Predominance and Superiority: The matter is properly maintained as a class action under Fed. R. Civ. P. 23(b)(3) because the common questions of law and fact identified herein, and to be identified through discovery, predominate over questions that may affect only individual Class members. Further, a class action is superior to all other available methods for the fair and efficient adjudication of this matter because the injuries suffered by the individual Class members are relatively small. As such, the expense and burden of individual litigation would make it virtually impossible for Plaintiff and the Class to individually seek redress for Abbott's wrongful conduct. Even if any individual person or group(s) of the Class could afford individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. The class action device is preferable to individual litigation because it provides the benefits of unitary adjudication, economies of scale, and comprehensive adjudication by a single court. In contrast, the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications with respect to individual Class members that would establish incompatible standards of conduct for the party (or parties) opposing the Class and would lead to repetitious trials of the numerous common questions of law and fact. Plaintiff knows of no difficulty that will be encountered in the management of this litigation that would preclude its maintenance as a class action. As a result, a class action is superior to other available methods for the fair and efficient adjudication of this action. Absent a class action, Plaintiff and the Class will continue to suffer losses, thereby allowing Abbott's

violations of law to proceed without remedy and allowing Abbott to retain the proceeds of their ill-gotten gains.

60. Plaintiff anticipates the issuance of notice setting forth the subject and nature of the instant action to the proposed Class. To the extent any further notices may be required, Plaintiff anticipates the use of additional media or mailings.

## CAUSES OF ACTION
## COUNT I
## BREACH OF THE IMPLIED WARRANTY OF USABILITY

(On Behalf of Plaintiff and the Classes)

61. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

62. Abbott, as manufacturer of the Recalled Products, impliedly warranted to Plaintiff and the Class that the Recalled Products were usable for their ordinary and intended use.

63. Abbott breached the implied warranty of usability in connection with the sale and distribution of the Recalled Products. At the point of sale, the Recalled Products while appearing normal—contained defects as set forth herein rendering them unusable.

64. Abbott, its agents and its employees knew or should have known that the Recalled Products suffer from a defect that causes negative health effects and/or places persons at risk for negative health effects to such an extent that the products are unusable.

65. Abbott's recall announcement instructs Class Members to not use Recalled Products because of the health risks. This renders the products unusable and thus worthless.

66. Abbott did not provide appropriate warranty relief notwithstanding the risks of using the Recalled Products. Plaintiff and the Class reasonably expected, at the time of purchase, that the Recalled Products were usable for their ordinary and intended use.

67. Had Plaintiff and Class Members known they would not be able to use their Recalled Products, they would not have purchased them or would have paid significantly less for them.

68. As a direct and proximate result of Abbott's breach of the implied warranty of usability, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

## COUNT II
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(On Behalf of Plaintiff and the Nationwide Class)

69. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

70. Abbott, as manufacturers of the Recalled Products, impliedly warranted to Plaintiff and the Class that the Recalled Products were of merchantable quality and safe for their ordinary and intended use.

71. Abbott breached the implied warranty of merchantability in connection with the sale and distribution of the Recalled Products. At the point of sale, the Recalled Products while appearing normal—contained defects as set forth herein rendering them unsuitable and unsafe for personal use.

72. Had Plaintiff and the Class known the Recalled Products were unsafe for use, they would not have purchased them.

73. Abbott did not provide appropriate warranty relief notwithstanding the risks of using the Recalled Products. Plaintiff and the Class reasonably expected, at the time of purchase, that the Recalled Products were safe for their ordinary and intended use.

74. As a direct and proximate result of Abbott's breach of the implied warranty of merchantability, Plaintiff and the Class have sustained damages in an amount to be determined at trial.

## COUNT III

## NEGLIGENT FAILURE TO WARN

(On Behalf of Plaintiff and the Nationwide Class)

75. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

76. Abbott owed Plaintiff and Class Members a duty of care and to warn of any risks associated with the Recalled Products. Abbott knew or should have known of the true risks but failed to warn Plaintiff and Class Members.

77. Abbott's negligent breach of duty caused Plaintiff and Class Members economic damages and injuries in the form of exposure to products with Cronobacter sakazakii and Salmonella Newport.

78. Plaintiff and Class members would not have purchased, chosen, and/or paid for all or part of the Recalled Products had they known that the risks associated with purchasing the product.

79. Plaintiff and the Class suffered damages in an amount to be determined at trial.

## COUNT IV

## NEGLIGENT RECALL

(On Behalf of Plaintiff and the Nationwide Class)

80. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

81. In issuing a voluntary recall, Abbott assumed duties to Plaintiff and the Class to exercise reasonable care in issuing and implementing the recall.

82. Abbott breached its duties by failing to adequately warn Plaintiff and the Class of the dangers associated with the use of the Recalled Products by refusing to promptly replace the Recalled Products.

83. As a direct result of Abbott's breach of duty, Plaintiff and the Class have suffered harm in an amount to be determined at trial.

## COUNT V
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT

Fla. Stat. §§ 501.201-213

(On Behalf of Plaintiff and the Florida Class)

84. Plaintiff incorporates by reference and re-alleges each and every allegation contained above, as though fully set forth herein.

85. Plaintiff was a consumer who used Defendant Abbott's contaminated Similac, Alimentum, and EleCare powdered infant formula primarily for personal use and thereby suffered ascertainable losses, including mental anguish, as a result of Defendant Abbott's acts and omissions in violation of the applicable consumer protection laws.

86. The Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") renders unlawful unfair methods of competition, unconscionable acts or practice, and unfair or deceptive acts or practices in the conduct of any trade or commerce. Fla. Stat. § 501.204.

87. Among other purposes, FDUTPA is intended "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or

unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.202.

88. As alleged herein, Plaintiff has suffered injury in fact and lost money as a result of Defendant's conduct because they purchased infant formula Products from Defendant in reliance on Defendant's representation that the ingredients in their infant formula Products were safe and effective and were not contaminated with microorganisms, such as Cronobacter sakazakii and Salmonella.

89. Defendant has engaged, and continue to engage, in conduct that is likely to deceive members of the public. This conduct includes representing in their labels that their infant formula Products contain only the ingredients listed in the label, which is untrue, and failing to make any mention that the infant formula Products are adulterated with microorganisms, such as Cronobacter sakazakii and Salmonella.

90. Florida Statutes, Section 501.204, makes unfair and/or deceptive trade practices in the conduct of any trade or commerce illegal.

91. Florida Statutes, Section 501.211, creates a private right of action for individuals who are aggrieved by an unfair and/or deceptive trade practice by another person.

92. Florida Statutes, Section 501.2105, provides that the prevailing party in litigation arising from a cause of action pursuant to Chapter 501 shall be entitled to recover attorney's fees within the limitations set forth therein form the nonprevailing party.

93. Florida Statutes, Section 501.213, provides that any remedies available under Chapter 501 are in addition to any other remedies otherwise available for the same conduct under state or local law.

94. Florida Statutes, Section 501.203 (3)(c), states that a person has violated the FDUTPA if he violates "any law, statute, rule, regulation, or ordinance which proscribes unfair, deceptive, or unconscionable acts or practices."

95. Defendant is engaged in the practice of manufacturing, marketing, distributing, selling and otherwise placing into the stream of commerce infant formula Products which constitutes trade and commerce as defined by Sections 501.203(8) Fla. Stat., and is therefore subject to FDUPTA.

96. As a result of Defendant's unfair and deceptive trade practices, Plaintiff is entitled to an award of attorney's fees pursuant to FDUTPA, Florida Statutes, Section 501.2105, if they prevail.

97. Defendant's conduct with respect to the labeling, advertising, marketing, and sale of their infant formula Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the gravity of the harm to its victims.

98. In accordance with FDUTPA, Plaintiff seeks an order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices and to commence a corrective advertising campaign. Defendant's conduct is ongoing and continuing, such that prospective injunctive relief is necessary.

99. Plaintiffs also seeks an order entitling them to recover all monies spent on the Defendant's infant formula Products, which were acquired through acts of fraudulent, unfair, or unlawful competition. In addition, the measure of restitution should be full refund of the purchase price insofar as the infant formula Products and their associated labels are worthless. But for Defendant's misrepresentations and omissions, Plaintiff would have paid nothing for

infant formula Products that have a risk of containing microorganisms such as Cronobacter sakazakii and Salmonella. Indeed, there is no discernible "market" for an infant formula product that may be adulterated with harmful bacteria. As a result, the Defendant's infant formula Products are rendered valueless.

100. As a result of Defendant's conduct in the manufacture of the Defendant's Similac, Alimentum, and EleCare Products violating the foregoing statutes and regulations, Plaintiff E.G. suffered damages in an amount to be proven at trial.

## COUNT VI
## UNJUST ENRICHMENT
(On Behalf of Plaintiff and the Classes)

101. Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs as if fully set forth herein.

102. Plaintiff and the Class members conferred a tangible and material economic benefit upon Abbott by purchasing the Recalled Products. Plaintiff and Class members would not have purchased, chosen and/or paid for all or part of Recalled Products had they known that they the true risks of using the Recalled Products while Abbott cannot provide a timely repair or replacement for the Recalled Products. Under these circumstances, it would be unjust and inequitable for Abbott to retain the economic benefits it received at the expense of Plaintiff and the Class.

103. Failing to require Abbott to provide remuneration under these circumstances would result in Abbott being unjustly enriched at the expense of Plaintiff and the Class members who endure being exposed to the risk of developing serious medical conditions and can no longer use their products safely.

104. Abbott's retention of the benefit conferred upon it by Plaintiff and the Class would be unjust and inequitable.

105. Plaintiff and the Class suffered damages in an amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, demands a jury trial on all claims so triable and judgment as follows:

A. Certifying the proposed Nationwide Class, appointing Plaintiff as representative of the Nationwide Class, and appointing counsel for Plaintiff as Lead Counsel for the Nationwide Class;

B. Certifying the proposed Florida Class, appointing Plaintiff as representative of the Florida Class, and appointing counsel for Plaintiff as Lead Counsel for the Florida Class;

C. Finding that Abbott breached the implied warranty of usability;

D. Finding that Abbott breached the implied warranty of merchantability;

E. Finding that Abbott negligently failed to warn Plaintiff and the Class;

F. Finding that Abbott negligently recalled the Recalled Products;

G. Finding that Abbott violated Florida's Deceptive and Unfair Trade Practices Act;

H. Finding that Abbott was unjustly enriched by its sale of the Recalled Products;

I. Awarding damages in an amount according to proof;

J. Awarding pre- and post-judgment interest at the maximum rate permitted by applicable law;

K. Reimbursing all costs, expenses, and disbursements accrued by Plaintiff in connection with this action, including reasonable attorneys' fees, costs, and expenses pursuant to applicable law and any other basis; and

L. Awarding such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Classes, hereby demands a trial by jury on all issues in this Class Action Complaint that are so triable.

July 21, 2022                                        Respectfully submitted,

                                                     *s/ Douglas R. Plymale*
                                                     **THE DUGAN LAW FIRM**
                                                     DOUGLAS R. PLYMALE  (SDIL No. 28409)
                                                     JAMES R. DUGAN, II (*pro hac vice* forthcoming)
                                                     DAVID S. SCALIA (*pro hac vice* forthcoming)
                                                     TERRIANNE BENEDETTO (*pro hac vice* forthcoming)
                                                     DANIELLE T. HUFFT(*pro hac vice* forthcoming)
                                                     MEKEL SMITH(*pro hac vice* forthcoming)
                                                     365 Canal Street
                                                     One Canal Place, Suite 1000
                                                     New Orleans, Louisiana 70130
                                                     Telephone: (504) 648-0180
                                                     Facsimile: (504) 648-0181
                                                     jdugan@dugan-lawfirm.com
                                                     dscalia@dugan-lawfirm.com
                                                     dplymale@dugan-lawfirm.com
                                                     tbenedetto@dugan-lawfirm.com
                                                     dhufft@dugan-lawfirm.com
                                                     mekel@dugan-lawfirm.com